UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

| | |
|---|---|
| SHEILA HODGE,<br>    Debtor. | Case No. 15-30684-dof<br>Chapter 13 Proceeding<br>Hon. Daniel S. Opperman |

_____/

DARRELL PARKS,
    Plaintiff,

v.                                                         Adversary Proceeding
                                                            Case No. 15-3089-dof

SHEILA HODGE,
    Defendant.
_____/

## TRIAL OPINION

### Introduction

The Plaintiff, Darrell Parks, the ex-husband of the Defendant, Sheila Hodge, started this adversary proceeding to challenge the discharge that Ms. Hodge may receive. Because Ms. Hodge filed a Chapter 13 petition, the Plaintiff's claims based on 11 U.S.C. § 523(a)(6) and (15) and 11 U.S.C. § 727(a)(3) and (4) must be dismissed. As for the 11 U.S.C. § 523(a)(4) claim of Mr. Hodge, this Court dismisses that claim. As to Ms. Hodge's Counter-Complaint seeking to avoid a Qualified Domestic Relations Order ("QDRO") as a judicial lien, the Court dismisses that Counter-Complaint.

### Findings of Fact

A.    Pre-Bankruptcy Events

The Plaintiff and the Defendant were married, but divorced in 2011. Although Ms. Hodge started the divorce action in 2009, a Judgment of Divorce was not entered until October 27, 2011.

1

Along the way, the Plaintiff and the Defendant fought a long battle over many issues.[1] By way of example, the Genesee County Circuit Court ("Trial Court") entered an Order dated October 22, 2010, detailing the failure of Mr. Parks to provide financial statements and documents, and to return $437,000.00 into a financial account. The Trial Court then ordered:

> IT IS HEREBY ORDERED:
>
> A. That Defendant shall make a full account of the $437,000.00 taken from the Raymond James Account # 3177 in June of 2009.
>
> B. Provide Bank Statements D.R. Parks LLC from June of 2009 until the present.
>
> C. Provide Statements for D.R. Park LLC from Fifth Third Bank from June 2009, until present.
>
> D. The Statements from the Raymond James Account with only the children's names on it from its inception until the present.
>
> E. Any monies held in Raymond James account ending # 3177 shall be released and placed into the trust account of Attorney Debra F. Donlan. Bank of America Acct # 004417892587.
>
> The Defendant DARRELL PARKS shall appear before the Court on Monday 10-25-10 at 1:30 or the Court will likely issue a bench warrant.

---

[1] Two observations made by the Genesee County Circuit Court in its October 27, 2011, Opinion give a sense of the proceedings.

> The Defendant filed his witness list on August 24, 2010 and indicated 48 individuals may appear and 38 representatives for Custodian of Records. He listed 100 likely exhibits. The Plaintiff filed her witness list on August 25, 2010 and indicated 95 individuals may appear.
>
> . . .
>
> Before the trial formally began, the court had serious concerns with the intense conflict between the parties and the amount of money each was spending on attorney fees and court costs. The other concerns were that Plaintiff had lost her salaried position at General Motors and that the Defendant's business might not be doing well financially.

2

After many days of trial, the Trial Court entered a Contested Judgment of Divorce dated October 27, 2011. The parties personal property was divided as follows:

PERSONAL PROPERTY

7. IT IS FURTHER ORDERED AND ADJUDGED that Plaintiff is awarded the following items of personal property, free and clear of any claim on the part of the Defendant:

   a. Bank accounts in her name as of the date of the entry of Judgment;

   b. 100% of her pre-marital General Motors Pension of approximately $307,289, 100% of her pre-marital General Motors SSRP of approximately $92,383, and 100% of her pre-marital IRA of approximately $46,342;

   c. The classic Corvette vehicle in her name;

   d. Other items of personal property, including her jewelry, Wave Runner, 16 foot boat, and other personal belongings and effects now in her possession, EXCEPT those specific items in her possession awarded to Defendant.

8. IT IS FURTHER ORDERED AND ADJUDGED that Defendant is awarded the following items of personal property, free and clear of any claim on the part of the Plaintiff:

   a. Bank accounts, which are in his name as of the date of entry of this Judgment;

   b. 100% of his pre-marital IRA, Raymond James account number ending in 2074;

   c. 100% of $210,000 that remains from his pre-marital investment account, Raymond James account number ending in 3177.

   d. 50% interest in the Plaintiff's marital General Motors pension, the Plaintiff's marital General Motors SSRP, and the Plaintiff's marital IRA, which are valued on or about January 1, 2010, unless the parties agree otherwise. The Defendant's attorney shall draft the appropriate QDROs awarding Defendant his interest;

   e. 1988 Hans Christian vessel named Triton, serial number 943021;
   f. 100% of the interests in D.R. Parks, L.L.C.;

g. The following personal items in the Plaintiff's actual or constructive possession:

  i. The Bronze Cast Manta Ray - Wylan; Radio wristwatch; Bose headset; Garmin GPS; Nikon camera; Bluetooth headset and charger; Sears toolbox and tools; Triton bubble timers; Triton spinnaker; Triton dinghy; Triton cockpit cushions; wood carvings collection; brass cannon; car trophies; half the movie rack with 260 movies; all items plaintiff testified she had in a box for the defendant.

h. All other items of personal belongings and effects now in his possession.

i. The court makes no award with respect to the Ford vehicle transferred to his daughter in 2004 and a Jaguar purchased as a gift to his daughter.

The Contested Judgment of Divorce was appealed to the Michigan Court of Appeals, but the parties continued their dispute in the Trial Court, focusing primarily on the QDRO issues. On June 28, 2012, the Trial Court stated in an Order:

### PLAINTIFF'S OBJECTION TO QDROS

Since the entry of the Judgment of Divorce in October 2011 the issue of the division of the Plaintiff's retirement accounts and the entry of the proposed QDROs has been addressed by the Court several times. The division of the Plaintiff's retirement accounts was addressed by this Court in an Order entered February 7, 2012, after both parties filed motions for reconsideration. Since the entry of that Order the Court has addressed the issue of entry of the proposed QDROs on three (3) separate occasions.

The Court issued rulings regarding the proposed QDROS in April 2012 and in May 2012 a further objection to the proposed QDROs was filed by Plaintiff. The Court directed Defendant to file a response to Plaintiff's Objection to the proposed QDROs. The Court has fully reviewed the three proposed QDROs, the Plaintiff's Objections to the QDROs and the Defendant's Response to the Objection to QDROs.

After a full review of the file and considering the history of this case, the Court finds that the parties have been unable and likely will be unable to agree upon any proposed QDRO. Further, the Court finds that two of the proposed QDROs do address some issues which were not ordered by the Court and therefore do not fully comport with the Judgment of Divorce.

4

Considering the aforementioned and the claim for appeal that has been filed by both parties; the Court finds that the appropriate resolution for this issue is for this Court to prepare a proposed QDRO for the GM SSPP and for counsel for the Defendant to submit the proposed QDROs to the plan administrator. By preparing the proposed QDRO, the Court may be amending the Judgment of Divorce after a claim for appeal has been filed, however, pursuant to MCR 7.208(C), the Court may correct defects in the record that were omitted or insufficiently done after a claim for appeal has been filed. Since the parties have been unable to agree on a proposed QDRO, the Court finds that the Judgment insufficiently addressed the division of the retirement accounts and the language of the QDRO.

The Trial Court then drafted the QDRO.

By February 2013, Mr. Parks and the Trial Court learned that Ms. Hodge withdrew money from her retirement accounts. As stated by the Trial Court:

> . . . Through discovery, defendant became aware that plaintiff withdrew $440,392.22 from her IRA at Charles Schwab and $298,000.00 from her General Motors SSRP account to avoid compliance with the Judgment and any QDRO provisions.
>
> On or about August 16, 2012, defendant filed a motion to show cause, which was heard by this court on or about September 10, 2012. Plaintiff failed to appear at the show cause hearing and a bench warrant was issued by this court.
>
> Discovery is being performed to determine which financial institutions the funds transferred into; therefore:
>
> IT IS HEREBY ORDERED that until further order of this court, the plaintiff, SHEILA HODGE, and any financial institution having on deposit any funds belonging to Sheila Hodge (SSN ending in 2040), and their agents, servants, employees and attorneys, and those persons in active concert or participation with them who receive actual notice of this injunction, be and each and every one of them are hereby restrained and enjoined and shall absolutely resist and refrain in any manner from withdrawing or transferring any funds specifically from any and all savings accounts, IRA's, certificates of deposits, money market accounts, including money market accounts with check writing privileges, retirement accounts, and/or any other financial instrument whatsoever.

While the Trial Court sorted out these issues, the Michigan Court of Appeals reversed a portion of the October 27, 2011, Contested Judgment of Divorce, but affirmed the remainder. As

5

summarized by the Michigan Court of Appeals:

> The trial court entered an order in 2011 on the contested issues of property division, spousal support, and marital debt. Neither party is totally pleased with the order and each appeals some aspect of the property division. Plaintiff claims that the trial court: (1) erred when it found that the balance of defendant's Raymond James account (the "Raymond James account" or the "3177 account") was defendant's premarital asset, (2) erred when it held that a sailboat was the separate property of defendant, and (3) made an inequitable division of property. Defendant asserts that the trial court misclassified a monetary transfer from plaintiff to her children as a gift and that the property distribution was inequitable in plaintiff's favor.
>
> We reverse the trial court's holding that the sailboat was the separate property of defendant. An enforceable postnuptial agreement provided that the sailboat was marital property. The trial court erroneously invalidated the agreement. We remand this issue to the trial court for a determination of the proper equitable distribution of the sailboat. We affirm the trial court's holding in all other respects and dismiss plaintiff's and defendant's remaining claims.

On April 1, 2014, the Trial Court found Ms. Hodge in contempt of court for violating the terms of the October 27, 2011, Contested Judgment of Divorce and sentenced her to 90 days in jail, with a condition of release if she made a $135,000.00 payment to Mr. Parks. (Exhibit I). She was subsequently released for medical reasons.

The Trial Court then addressed the issue remanded by the Michigan Court of Appeals, as well as other issues that arose after the Contested Judgment of Divorce. Excerpts from the February 24, 2015, Order Concerning Post Judgment Property Issues best summarize this activity:

BACKGROUND

> The Contested Judgment of Divorce was filed on October 28, 2011. On August 21, 2012 Plaintiff Wife was served with an Order to Show Cause regarding the withdrawal of retirement funds that she made between on or about February 28, 2011 through on or about October 17, 2011. Defendant Husband had been awarded $135,500 [sic] from these funds in the Judgment of Divorce. The motion was heard before the court on September 10, 2012 and the Plaintiff did not appear. She was found in contempt of court and a bench warrant for her was issued.
>
> On December 4, 2013 the Michigan Court of Appeals published an opinion,

6

which affirmed this court's findings on all issues other than the disposition of the Triton sailboat. On April 1, 2014 the court held a show cause hearing and found Plaintiff Wife in Civil Contempt of Court for violating the terms of the divorce judgment. This matter proceeded to mediation on June 11, 2014, where Plaintiff Wife asserts that Defendant Husband left the mediation without being excused, after which the matter proceeded to an evidentiary hearing on June 19, 2014, continued again on July 17th, and concluded on August 20, 2014 with the testimony from the Plaintiff's son, Justin Hodge.

. . .

2) CIVIL CONTEMPT OF COURT AND MONEY DAMAGES

The court had a hearing on April 1, 2014 and the Plaintiff former wife, Sheila Hodge was found in civil contempt of court for taking $135,500 [sic] from retirement funds, which had been awarded to the former husband Darrell Parks. She was sentenced to 90 days in jail, but with the condition that upon payment of $135,500, [sic] she could purge herself of contempt and be released.

The Defendant submitted through his attorney a summary of his damages, which he claims to be in the amount of $346,617.27. The Defendant also claimed attorney fees in the amount of $42,600.

The Defendant argues that he should be made whole on all of his losses. He claims lost income of $72,730 based on an almost 18% annualized rate of return his financial advisor achieved on his IRA. Additionally, he argues that he should be awarded interest on his credit cards for their use during the time he did not have access to the monies awarded to him.

The Plaintiff does not dispute that Defendant is entitled to the $135,000 she withdrew from retirement funds between on or about February 28, 2011 through on or about October 17, 2011.

. . .

7

FINDINGS

. . .

2) CIVIL CONTEMPT OF COURT AND MONEY DAMAGES

There is no dispute that Defendant is owed the $135,000 he was awarded, from retirement accounts. There is no dispute that Plaintiff had withdrawn those monies, which as a result has deprived Defendant of use of those funds.

. . .

The court is satisfied that Plaintiff has deprived Defendant of the $135,000 and that interest on this amount is reasonable and equitable under these circumstances. Although there is credible evidence that the Defendant could have earned 18% off of the $135,000, the court finds that such an interest rate would result in a punitive measure against the Plaintiff. The court is satisfied that under the circumstances of this case, a fair, equitable and just rate of interest that operates as neither a windfall to the recipient nor as a punitive measure against the payor is 7%.

. . .

4) PLAINTIFF REQUEST FOR SPOUSAL SUPPORT

. . .

When deciding spousal support the court should make specific factual findings regarding the factors that are relevant to the particular case. *Olson v. Olson*, 256 Mich App 619, 631, 671 NW2d 64 (2003). Factors particularly relevant are:

1. The past relations and conduct of the parties. Plaintiff acknowledges in her post hearing brief that she that she [sic] had done some misfortunate things with her money that has caused her large tax liabilities. Plaintiff has deprived Dependant [sic] of $135,000 by unilaterally withdrawing those monies from retirement accounts, which was the subject of the April 1, 2014 contempt hearing. Plaintiff's conduct and possible squandering of her funds make her claim for spousal support under this factor inappropriate.

2. The present situation of the parties. Defendant claims his monthly income is approximately $1,322. Plaintiff claims that Defendant's monthly income may be in excess of $10,000 per month. It appears that Plaintiff has a monthly income of $3,279, and she may have some assets or monies of which the court is unaware. Although Defendant may possibly have a more substantial income than

8

Plaintiff, Plaintiff's monthly income in no way impoverishes her. Additionally, Plaintiff's own actions regarding significant monies have greatly contributed to her present situation. Those actions, her monthly income, and her present situation do not make spousal support reasonable.

. . .

4. General principles of equity. This factor greatly favors Defendant. Plaintiff denied Defendant use of $135,000 from retirement funds that were awarded to him in the Judgment of Divorce, by unilaterally withdrawing those funds, therefore, depriving Defendant use of those funds. Plaintiff denied Defendant the possibility of earning substantial interest on those funds. Plaintiff has a comfortable monthly income, and although her financial position could have been better, it was her own actions and behavior that created her situation, and it would be inequitable to in essence penalize the Defendant for Plaintiff's conduct and very poor financial decisions post-judgment.

. . .

Due to the history of this case, the court finds it necessary to enforce and secure Plaintiff's financially [sic] obligations to the Defendant. Plaintiff's financial obligation to Defendant shall be secured by a life insurance policy(ies). *See Sun Life of Canada v. VerKuilen*, 144 Mich App 612, 375 NW2d 776 (1985). This policy(ies) shall be maintained in full force for as long as the obligations remain unpaid.

Under the Employee Retirement Income Security Act (ERISA) a judgment may award a former spouse an interest in a qualified employee benefit plan as long as the court order meets the requirements of a Qualified Domestic Relations Order (QDRO). The court sees no reason why a QDRO may not be used to satisfy an unpaid debt when one party has failed to comply with orders from the court to satisfy that debt. *D'Asenzo v. D'Asenzo*. Nos. 230077, 239679, 2003 Mich App LEXIS 1086 (May 6, 2003). A QDRO on Plaintiff's pension shall be entered for the benefit of Defendant to satisfy Plaintiff's financial obligation.

. . .

IT IS FURTHER ORDERED that Plaintiff shall secure these financial obligations by making Defendant primary beneficiary of life insurance policy(ies) for at least $159,567.96 until the obligations have been satisfied in full. If Plaintiff's current life insurance policies are not adequate to secure her obligations, she shall immediately purchase additional life insurance coverage sufficient to satisfy the financial obligations of this order. In the event the financial obligation surpasses

9

$159,567.96, Plaintiff shall secure additional life insurance to secure whatever outstanding monies are owed to Defendant. All other beneficiaries, if any, must be declared as "secondary" to Defendant. Defendant may send a copy of this order to the insurer promptly upon its entry. A photocopy of this order will serve as an authorization to the insurer to release information to Defendant, or his counsel, to confirm the fact and amount of life insurance coverage with the required beneficiary designation. **Additionally, within 30 days of the Order's entry and annually thereafter, Plaintiff shall provide Defendant proof of her compliance with this life insurance security provision.** If Defendant predeceases Plaintiff, Plaintiff's financial obligations SHALL NOT extinguish and Defendant's estate, or a representative of his estate, shall immediately be made primary beneficiary on Plaintiff's life insurance policy(ies). Should Plaintiff fail to maintain insurance as required or should the amount of such insurance be inadequate to discharge the obligation, Defendant, or his estate, shall be entitled to payment from Plaintiff's estate, and any other death benefits or insurance payable to any other person by reason of Plaintiff's death will be subject to a constructive trust in favor of Defendant, or his estate, to the extent of his unsatisfied claims. Any proceeds in excess of the secured obligations should be paid to Plaintiff's estate.

IT IS FURTHER ORDERED that a Qualified Domestic Relations Order (QDRO) on Plaintiff's pension shall be entered awarding Defendant $700.00 of Plaintiff's monthly benefit from her GM pension plan. Attorney Joseph M. Xuereb shall prepare, or have a qualified individual prepare, the QDRO.

B.   Bankruptcy Events

   1.   Procedural History

Ms. Hodge filed a Chapter 13 petition with this Court on March 20, 2015. Mr. Parks timely filed the Complaint in this adversary proceeding, alleging that Ms. Hodge is not entitled to a discharge of her debts to him under 11 U.S.C. § 523(a)(4), (6) and (15) and to deny her discharge under 11 U.S.C. § 727(a)(3) and (4). Ms. Hodge answered the Complaint and filed a Counter-Complaint to avoid the QDRO as a judicial lien. Trial commenced December 6, 2016, and was continued to January 23, 2017, and was completed that day. The Court allowed the parties to submit post-trial briefs and took the matter under advisement after the filing of the last brief on February 24, 2017.

   2.   Trial Testimony

Exhibits A-T were admitted by agreement of the parties. Ms. Hodge, her divorce attorney, Debra Donlan, and Mr. Parks testified at trial.

Ms. Hodge was a General Motors Corporation employee for decades and accrued a substantial retirement in the form of pension payments and retirement savings accounts. Unfortunately, she had to retire because of her worsening medical condition caused by relapsing remitting multiple sclerosis. Ms. Hodge was diagnosed with this affliction many years earlier, but was able to stay employed. By 2009, however, she was forced to retire. At about the same time as the entry of the Contested Judgment of Divorce, she was notified by General Motors that she needed to roll over her retirement funds into a new account. She did so, but without realizing that the method she chose not only created a tax liability, but also an early withdrawal charge. From 2009 through 2012, Ms. Hodge withdrew money or transferred money to new accounts. Many of her withdrawals were to pay normal expenses; the largest of which was to pay her divorce attorneys, who received $163,500.

Ms. Hodge testified that she was not aware of the tax ramifications of her actions. Also, she testified that she was not cognizant of the impact her actions had on Mr. Parks or that she violated various divorce court orders. Per her testimony, she always believed there were sufficient marital assets to satisfy Mr. Parks and if not, she had substantial pre-marital assets available to cover any shortfall. She attributes her lack of awareness to her medical condition, her lack of financial sophistication, her personal belief that after the appeal of the Contested Judgment of Divorce she would be owed money by Mr. Parks, and her reliance on advice of her counsel. Ms. Donlan testified as to the last reason and supported Ms. Hodge's testimony that the chances of succeeding on her appeal were good, but stopped short of saying that she or any attorney advised Ms. Hodge to handle the funds as she did. The Court finds Ms. Donlan's testimony on this point much more credible

11

based on the demeanor of the witnesses and the normal role an attorney would have in this situation.

Ms. Hodge testified that after she started withdrawing money she began, and in some instances, continued, to experience financial, physical, and emotional distress. The assessment of additional taxes and collection action of the Internal Revenue Service, the failure of the appeal, the subsequent action of the Trial Court, and her deteriorating health all combined to confuse her greatly. During this time, she made many poor financial decisions, few of which benefitted her and most of which were directly against her. For example, Ms. Hodge paid many bills, including credit cards and attorney fees, without inquiring of more favorable payment terms or discounts. Also, Ms. Hodge could have filed for bankruptcy protection much earlier, before paying some or all of this dischargeable debt. Instead, she paid most of her debt that could arguably have been discharged, while leaving taxes unpaid.

At trial, Ms. Hodge appeared at times clear and confident of her answers; at other times confused and uncertain.

Mr. Parks recounted many of the Trial Court events and also testified that Ms. Hodge forged his name on papers so that she could remortgage her house, that he believed she was very aware of what she was doing in regard to her retirement accounts, and that she knew the exact ramifications of her acts on him.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) (determinations as to the dischargeability of particular debts).

## Applicable Law

11 U.S.C. § 523(a)(4) states:

(a) A discharge under section . . . 1328(b) of this title does not discharge an individual debtor from any debt –

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

A. Fraud or Defalcation While Acting in a Fiduciary Capacity

The Sixth Circuit Court of Appeals has held that defalcation for purposes of § 523(a)(4) "occurs through the misappropriation or failure to properly account for those trust funds" by a fiduciary. *R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 180 (6th Cir. 1997). There must be a "pre-existing fiduciary relationship." *Patel v. Shamrock Floorcovering Services, Inc. (In re Patel)*, 565 F.3d at 963 (6th Cir. 2009). In *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754 (2013), the Supreme Court decided the level of intent required for defalcation under § 523(a)(4):

> [W]here the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term [defalcation] requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. . . . Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary consciously disregards (or is willfully blind to) a substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty. That risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a *gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation.

*Id.* at 1759-60 (internal quotation marks and citation omitted).

In conjunction with establishing defalcation, Mr. Parks must also demonstrate that a trust relationship exists. The Sixth Circuit has held that § 523(a)(4) requires:

(1) a fiduciary relationship
    (a) in the form of an express trust or
    (b) technical trust relationship;
(2) breach of that fiduciary relationship; and
(3) a resulting loss.

In *In re Johnson*, 691 F.2d 249, 251-52 (6th Cir. 1982), the Court held that fiduciary capacity

13

"applies only to express or technical trusts and does not extend to implied trusts, which are imposed on transactions by operation of law as a matter of equity" and "the requisite trust relationship must exist prior to the act creating the debt and without reference to it".

Therefore, to establish the existence of an express trust, the plaintiff "must demonstrate: (1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary." *In re Patel*, 565 F.3d at 968 (internal quotation marks and citation omitted).

Once the plaintiff has established the existence of a trust and that the defendant is a trustee, the burden of proof shifts to the defendant. *Cappella v. Little (In re Little)*, 163 B.R. 497 (Bankr. E.D. Mich. 1994). As stated by the *Cappella* Court:

> It has been stated that the beneficiary has the initial burden of proving the existence of a fiduciary duty and the trustee's failure to perform it . . . [T]he burden then shifts to the trustee . . . to prove it acted with . . . good faith . . . and made full disclosure of all facts related to the transactions at issue. . . . [T]he mere failure to account establishes a loss.
>
> Since trustees have a duty to account under Michigan law, it is only logical that the Debtor, a statutory trustee, must prove that no defalcation occurred – i.e., that he be required to account for the trust funds he received. . . . [T]he Michigan Supreme Court has stated that where a trustee is called upon in a court of equity to account for the funds received by him as trustee, . . . the duty rests upon him to so account, and the burden of proof is upon him to establish the correctness of the account.

*Id.* at 500-01 (internal quotation marks and citations omitted).

B.     Embezzlement and Larceny

"[F]or Section 523(a)(4) purposes, federal common law, rather than state law, controls the meaning of these terms." *Williams v. Noblit (In re Noblit)*, 327 B.R. 307, 311 (Bankr. E.D. Mich. 2005). The burden is upon the plaintiff to demonstrate the debt is nondischargeable by a preponderance of the evidence. *Atassi v. McLaren (In re McLaren)*, 990 F.2d 850, 852 (6th Cir. 1993).

14

"Federal common law defines embezzlement as 'the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come.'" *Noblit*, 327 B.R. at 311 (quoting *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172-73 (6th Cir.1996)). "An essential element of the crime [of embezzlement] is a felonious or fraudulent intent." *People v. Douglass*, 293 Mich. 388, 391, 292 N.W. 341 (1940) (citation omitted). "[T]he requisite intent to defraud must exist at the time of conversion or appropriation of the property to defendant's own use" *People v. Artman*, 218 Mich. App. 236, 241, 553 N.W.2d 673 (1996). "The mere failure to pay over moneys belonging to another, without a felonious intent, is not embezzlement." *Douglass*, 293 Mich. At 391; *Artman,* 218 Mich. App. 241-42. "[C]oncealment or its absence, [or] refusal to pay . . . on demand . . . are not to be taken as declared essentials of the offense or defense but merely as circumstances bearing on the intent." *American Life Ins. Co. v. U.S. Fid. & Guar. Co.*, 261 Mich. 221, 224-25, 246 N.W. 71 (1933). "If property is converted without concealment, and under a bona fide claim of right, the conversion is not embezzlement, however unfounded the claim may be." *Douglass,* 293 Mich. at 391.

> Larceny is different [from embezzlement] in that the original taking must have been unlawful, and is defined as "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the owner."

*Noblit*, 327 B.R. at 311 (quoting *Graffice v. Grim (In re Grim)*, 293 B.R. 156, 166 (Bankr. N.D. Ohio 2003)).

Analysis

A.    Dismissal of 11 U.S.C. § 523(a)(6) and (15) and 11 U.S.C. § 727(a)(3) and (4) Claims

       Ms. Hodge filed a Chapter 13 petition and any discharge given to her in that chapter is by

way of 11 U.S.C. § 1328, not 11 U.S.C. § 727. Accordingly, Mr. Park's 11 U.S.C. § 727 claims are not sustainable and the Court dismisses those claims. In the event Ms. Hodge does later seek an 11 U.S.C. § 727 discharge, Mr. Parks may renew his objection.

Likewise, 11 U.S.C. § 1328(a) grants a discharge of a larger array of debts, including those under 11 U.S.C. § 523(a)(6) and (15). Similarly, Mr. Parks' 11 U.S.C. § 523(a)(6) and (15) claims are dismissed, but may be renewed if Ms. Hodge requests a Chapter 7 discharge.

B.     The 11 U.S.C. § 523(a)(4) Claim of Mr. Parks

Mr. Parks' 11 U.S.C. § 523(a)(4) claim still remains under 11 U.S.C. § 1328(a). Mr. Parks argues, in the alternative, that Ms. Hodge either committed a defalcation as a fiduciary, embezzlement or larceny. The Court disagrees.

First, Mr. Parks has not established any fiduciary relationship between Ms. Hodge and himself. While it is true the Trial Court did award 50% of Ms. Hodge's marital pension and retirements funds, the Court directed Mr. Parks' attorney to draft the necessary QDRO and did not impose any duty on Ms. Hodge. Thereafter, because of direction from General Motors that she needed to roll over these monies, Ms. Hodge began to make a series of unwise financial moves. Mr. Parks has not guided the Court to any language in the Trial Court orders creating a trust, so an essential element of his case does not exist.

Likewise, the Court cannot find the necessary intent as required by 11 U.S.C. § 523(a)(4) and *Bullock*. The Court first does not see "bad faith, moral turpitude, or other immoral conduct" as described by *Bullock*. Here, Ms. Hodge's actions were financially unwise, perhaps even foolhardy, but not intentionally improper or in conscious disregard of a substantial and unjustifiable risk. Instead, Ms. Hodge took money from these accounts to pay creditors, many of whom she could have discharged in a Chapter 7. Moreover, she did so without knowledge of the significant tax

16

ramifications that drastically reduced her available funds. Additionally, she did all of this while suffering declining health, which she claims affected her thought process.

That said, the Court does acknowledge and recognize that Ms. Hodge did act improperly, that there is evidence of her ill will and intent toward Mr. Parks, such as the forgery of his signature on legal documents, and of the significant impact on Mr. Parks. All of these facts make for a closer call as to Ms. Hodge's intent, but the Court, after hearing the testimony of the witnesses, observing the demeanor of the witnesses, and weighing the testimonial and documentary evidence cannot find the requisite intent required by 11 U.S.C. § 523(a)(4) or *Bullock*. It may be a closer call, but one that is in favor of Ms. Hodge, even if just barely so.

The Court also does not find felonious, fraudulent, or unlawful intent as required for either embezzlement or larceny. Again, while Ms. Hodge's actions were undoubtedly unwise and had an impact on Mr. Parks, each act can be explained in the context of the times and Ms. Hodge's dire financial and medical circumstances. Also, while a closer call, the Court does not find the requisite intent required by these subsections of 11 U.S.C. § 523(a)(4).

Before concluding its analysis of 11 U.S.C. § 523(a)(4), the Court does distinguish the elements of this cause of action with those under other subsections of 11 U.S.C. § 523, most notably (a)(6) and (15). The Court has considered Ms. Hodge's failure to obey orders of the Trial Court, the effect of which in many cases is to the detriment of Mr. Parks. Some of Ms. Hodge's acts may be evidence of requisite intent in 11 U.S.C. § 523, but not in the (a)(4) subset. While these subsections are not available to creditors in a Chapter 13 by virtue of 11 U.S.C. § 1328(a), this Court's findings of fact could support a different conclusion in the Chapter 7 context. In particular, it is disturbing that Ms. Hodge disregarded and violated some orders of the Trial Court. In a different chapter context, with additional facts the Court could consider, Mr. Parks may have sustained his burden of

proof, but that is not the case here.

C.  Ms. Hodge's Counter-Complaint

Ms. Hodge seeks to have this Court set aside or enjoin orders of the Trial Court regarding a QDRO, arguing that these orders constitute a judicial lien avoidable under 11 U.S.C. § 522(f)(1).

A "judicial lien" is defined in the Bankruptcy Code as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). A "lien" is further defined as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). Under Michigan law, which is applicable to the February 24, 2015, Trial Court Order relevant here, a definition for "lien" as found in the Michigan Uniform Fraudulent Transfer Act, includes "judicial lien," is similar in wording and states as follows:

> (i) "Lien" means a charge against or an interest in property to secure payment of a debt or performance of an obligation, and includes a security interest created by agreement, a judicial lien obtained by legal or equitable process or proceedings, a common-law lien, or a statutory lien.

M.C.L.A. § 566.31(i).

The Court disagrees with Ms. Hodge's argument and denies this request for relief.

First, the Contested Judgment of Divorce awarded 50% of Ms. Hodge's marital pension and retirement accounts to Mr. Parks and directed the attorney for Mr. Parks to prepare the necessary documents – the QDRO. Before that could be done, Ms. Hodge closed those accounts and rolled each account elsewhere. The Contested Judgment of Divorce divided the property, it did not create any lien. Thereafter, by a series of transfers, many of which were initiated by Ms. Hodge, Mr. Parks' property interest was moved and lost. Ms. Hodge's pre-marital pension remained, so the Trial Court directed that a QDRO be placed on that account to divide that property right and to

create a mechanism to see that Mr. Parks would get his property that he was granted in the Contested Judgment of Divorce. Here, the QDRO is not a lien, but instead a device to divide a property interest.

While making this finding, the Court does recognize the Trial Court's February 24, 2015, Order noting that the QDRO was to satisfy Ms. Hodge's financial obligation to Mr. Parks. This financial obligation, at first blush, may be the end of the analysis and would allow a conclusion that a judicial lien was created. Looking further, however, the Court sees that the Trial Court was correcting an error made in the division of personal property, and not the creation of a debt. There is no question that this language, taken out of context, supports Ms. Hodge's arguments. When placed in context, however, the language attempts to restate the previous property division in the Contested Judgment of Divorce. Again, a closer answer than Mr. Parks may prefer, but one that balances in favor of Mr. Parks.

Second, while the Court did not find the requisite actionable intent as required by 11 U.S.C. § 523(a)(4), it made that conclusion in part because it failed to see the direct harm Ms. Hodge intended to inflict on Mr. Parks in that there were remaining assets, such as her pension, to satisfy her division of property awarded to Mr. Parks in the Contested Judgment of Divorce. If this asset is not divided as contemplated by the Trial Court orders, then the Court would need to reconsider its finding that Ms. Hodge lacked the necessary intent under 11 U.S.C. § 523(a)(4).

The Court does understand the dire financial condition Ms. Hodge is in, but, as stated in this Opinion, much of that condition is of Ms. Hodge's making. If Ms. Hodge is in severe financial distress, she does have recourse to the Trial Court. Ms. Hodge may not fare well there if relief is requested, but that issue is with the Trial Court.

Conclusion

The Court dismisses the Plaintiff's 11 U.S.C. § 523(a)(6) and (15) counts without prejudice. The Court also dismisses the Plaintiff's 11 U.S.C. § 727(a)(3) and (4) counts without prejudice. The Court dismisses the Plaintiff's 11 U.S.C. § 523(a)(4) count and the Defendant's Counter-Complaint with prejudice.

**Not for Publication**

```
Signed on April 24, 2017
                                          /s/ Daniel S. Opperman
                                     Daniel S. Opperman
                                     United States Bankruptcy Judge
```